UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIWAKAR UBNARE,<br><br>*Plaintiff*,<br><br>v.<br><br>TRILLIAN TECHNOLOGIES, INC.,<br><br>*Defendant*. | Case No. 1:24-cv-3129 (ACR) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Diwakar Ubnare is a former employee of Defendant Trillian Technologies, Inc., an IT consulting firm based in Washington, D.C. Dkt. 1 ¶ 3–4. Plaintiff filed suit against Defendant alleging a violation of District of Columbia Wage Payment and Collection Law ("DCWPCL") and breach of contract. *Id.* Defendant failed to appear or answer, so Plaintiff moved for default judgment. Dkt. 11. For the reasons explained below, the Court **GRANTS** Plaintiff's Motion **IN PART**. It awards Plaintiff the following: his unpaid wages, unpaid PTO, wire transfer fees, reimbursement for the work-expensed laptop charger, liquidated damages, and post-judgment interest. The Court defers ruling on the award for attorney's fees and costs and the availability of pre-judgment interest pending further briefing.

### I.    BACKGROUND

Plaintiff alleges the following: he worked for Defendant as a full-time employee from October 26, 2020 to July 24, 2024. Dkt. 11-2 at 1. For most of that period, Defendant paid

Plaintiff a semi-monthly salary of $7,708.33. *Id.* But in late 2023, Defendant began withholding Plaintiff's wages. *Id.*

On November 7, 2023, Plaintiff informed Defendant that he had not received his wages for the October 16-31, 2023 pay period. Dkt. 1 ¶ 11. Despite this notice, Defendant failed to pay Plaintiff through the January 31, 2024 pay period. *Id.* Plaintiff eventually began receiving payments again in February 2024, but Defendant resumed withholding his wages from April 16 to May 15, 2024. *Id.* In total, Defendant failed to issue nine paychecks and withheld $69,374.97 from Plaintiff. *Id.* ¶ 11–12.

Between January and July 2024, Defendant attempted to remedy the issue by sending Plaintiff six wire transfers. Dkt. 11-2 at 1. Defendant paid a substantial portion of Plaintiff's wages ($54,501.51) but fell short of the full amount owed. To date, Defendant still owes Plaintiff $14,873.46 in unpaid wages, plus an additional $7,708.33 in unpaid PTO, $105 in wire transfer fees Plaintiff incurred because of the untimely payments, and $75.89 for a work-expensed laptop charger. *Id.* at 2. In total, Defendant still owes Plaintiff $22,762.68.

Plaintiff filed his Complaint on November 4, 2024, and properly served Defendant on December 17, 2024. After Defendant failed to appear or otherwise respond, Plaintiff filed an affidavit for default on January 28, 2025. Dkt. 4. The Clerk of the Court entered default on January 29. Dkt. 5. Plaintiff moved for default judgment on February 17, then filed a renewed motion on June 11, and a second renewed motion on July 15. *See* Dkts. 7, 9, and 11. The second renewed motion is the operative motion. *See* Dkt. 11.

Plaintiff now asks the Court to award him $22,762.68 for his unpaid wages, unpaid PTO, wire transfer fees, and work-expensed laptop charger. Dkt. 11-2 at 3. He also requests

2

$67,745.37 in liquidated damages, $25,755.01 in attorney's fees and costs, and pre- and post-judgment interest. *Id.*; *see also* Dkt. 11-1 at 7–8.[1]

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a); *see also Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). Rule 55 sets forth a two-step process for a party seeking a default judgment: first, entry of a default by the clerk of the court, followed by entry of a default judgment by either the clerk or the court.

## III.     ANALYSIS

### A. Jurisdiction

Before entering a default judgment, a court must comply with its "affirmative obligation to determine whether it has subject-matter jurisdiction over the action," *Friends Christian High Sch. v. Geneva Fin. Consultants*, 321 F.R.D. 20, 22 (D.D.C. 2017) (cleaned up), as well as personal jurisdiction over the defendant, *see Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000. Plaintiff resides in Fishers, Indiana, and Defendant's principal place of business is in Washington,

---

[1] Plaintiff alleges that Defendant breached the employment contract by failing to pay his health insurance premiums. Plaintiff claims he "had to pay medical expenses in the amount of $2,315.29, which would have been covered by his health insurance with the company." Dkt. 1 ¶ 40. Plaintiff appears to have abandoned his breach of contract claim. He makes no mention of medical expenses in the operative motion for default judgment and has provided no evidence to substantiate the claim that he paid $2,315.29 in medical expenses.

D.C. Dkt. 1 ¶ 7; *see also* Dkt. 11-2 at 7.  Additionally, Plaintiff requests an award of $116,263.06, plus pre- and post-judgment interest.  *See* Dkt. 11-2 at 3; Dkt. 11-1 at 7–8.

This Court also has personal jurisdiction over Defendant under D.C. Code § 32-1308(a)(1)(A) and D.C. Code § 13-423 because Defendant is an "employer" with respect to Plaintiff and resides and transacts business in the District of Columbia.[2]

### B. Liability

Having established jurisdiction, the Court must determine whether Plaintiff has alleged facts establishing Defendant's liability.  *See Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).  He has.

The DCWPCL requires employers to "pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month."  D.C. Code § 32–1302.  Plaintiff asserts that Defendant violated the DCWPCL by failing to pay his earnings in full.  To support his claim, he submitted affidavits, his offer letter, pay stubs, and emails between himself and Defendant.  Plaintiff's offer letter states he was hired as a full-time employee of Defendant with a semi-monthly salary of $7708.33, and 20 days of PTO "which is accrued at the rate of 5 hours per semi-monthly pay period."  Dkt. 11-2 at 5.  Plaintiffs pay stubs confirm these amounts, and the emails he submitted show his efforts to obtain the withheld payments from Defendant.  Accepting his well-pleaded allegations as true, the Court finds that Plaintiff has provided sufficient evidence to establish Defendant's liability.  *See Boland*, 763 F. Supp. 2d at 68.

---

[2] The Court takes judicial notice that Defendant transacts business in the District of Columbia. *See* Trillian Technologies Inc., *About*, LinkedIn, https://perma.cc/C9DF-VUXM (last visited Dec. 2, 2025).

### C. Damages

The next issue is whether Plaintiff has submitted sufficient evidence to allow the Court "to determine the appropriate sum for the default judgment." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002). "The [C]ourt has considerable latitude in determining the amount of damages." *Boland*, 763 F. Supp. 2d at 67.

Plaintiff seeks $22,762.68 for his unpaid wages, unpaid PTO, wire transfer fees, and work-expensed laptop charger. He also seeks $67,745.37 in liquidated damages, $25,755.01 in attorney's fees and costs, and pre- and post-judgment interest. The Court will address these issues *seriatim*.

#### 1. Unpaid wages, unpaid PTO, wire transfer fees, and work-expense

As explained above, the uncontroverted allegations and evidence show that Defendant unlawfully withheld Plaintiff's wages. Thus, Plaintiff is entitled to relief under the DCWPCL. *See* § 32-1308(a)(1)(A). Plaintiff attests that Defendant withheld $14,873.46 in wages, $7,708.33 in unpaid PTO, $105 in wire transfer fees, and $75.89 for a work-expensed laptop charger, and has provided sufficient evidence establishing the amounts owed to him. Because the Court agrees with Plaintiff's calculations, it will award Plaintiff the amount requested—$22,762.68.

#### 2. Liquidated damages

The DCWPCL mandates "[l]iquidated damages equal to treble the amount of unpaid wages" to prevailing plaintiffs. *Id.* "This provision makes clear that treble damages are mandatory, not discretionary, if requested." *Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1072 (D.C. 2020). Plaintiff has requested liquidated damages. Therefore, the Court will

5

award him treble the amount of unpaid wages ($14,873.46) plus unpaid PTO ($7,708.33)—$67, 745.37.[3]

### 3. Attorney's fees and costs

Plaintiff also seeks $24,279.15 in attorney's fees and $1,475.86 in costs. The DCWPCL permits prevailing plaintiffs to recover "reasonable attorneys' fees and costs." § 32-1308(a)(1)(A). To determine a reasonable fee, a court must "multiply[] the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888 (1984). The party seeking the fees and costs bears the burden of proving the reasonableness of both the hours worked and the hourly rate. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 105 (D.D.C. 2015).

Here, Plaintiff has met his burden with respect to counsel's hourly rates. Under the DCWPCL, attorney's fees are "computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F.Supp.2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services." § 32-1308(b)(1). Plaintiff's counsel attests that the *Salazar* billing rates in this case are as follows: $1,141.00/hour for Eric Siegel (an attorney with over 20 years experience), $948.00/hour for James Miller (an attorney with 11 years of experience), $473.00/hour for Megan Harrington (a second-year attorney), and $258.00 for Nicole Davis (a senior paralegal). Dkt. 11-1 at 7. The Court agrees. The rates above conform to the updated LSI *Laffey* matrix used in *Salazar*. As such, the Court finds that Plaintiff's proposed hourly rates are reasonable.

---

[3] The term wages "means all monetary compensation after lawful deductions, owed by an employer." § 32-1301(3). This includes "[f]ringe benefits paid in cash." *Id.*

The Court must now "make an independent determination [on] whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). In other words, the Court must determine whether Plaintiff has shown that his attorneys spent a reasonable number of hours on his case. To support his fee request, Plaintiff must provide the Court with "sufficiently detailed information about the hours logged and the work done." *Id.* He has not done so. Plaintiff merely lists the total hours worked each day and the corresponding fee amounts; he does not identify which attorney performed the work or describe the specific tasks completed. *See* Dkt. 11-1 at 7–8. Without this information, the Court cannot determine whether the "tasks arose from this action," *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 34 (D.D.C. 2010), or whether the time expended was "'excessive, redundant or otherwise unnecessary,'" *Ashraf-Hassan v. Embassy of France in the United States*, 189 F. Supp. 3d 48, 61 (D.D.C. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Accordingly, the Court will defer ruling on Plaintiff's request for attorney's fees and costs until it receives the information necessary to make its determination.

4. **Pre-interest judgment**

Lastly, Plaintiff requests pre- and post-judgment interest "on all monetary sums requested above." Dkt. 1 ¶ 43. Post-judgment interest is proper under 28 U.S.C. § 1961. Plaintiff has not, however, provided justification to support his request for pre-judgment interest. The Court will defer ruling Plaintiff's request for pre-judgment interest pending further briefing. In its brief, Plaintiff should cite the relevant statute(s) and address the pre-judgment interest rate that apply to this case.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment, Dkt. 11, **IN PART**, and awards Plaintiff the following amounts: $22,762.68 for unpaid wages, unpaid PTO, wire transfer fees, and the work-expensed laptop charger; and $67,745.37 in liquidated damages.

The Court **ORDERS** Plaintiff to submit a supplemental brief on attorney's fees and costs and pre-judgment interest on or before December 22, 2025.  Plaintiff's brief should not exceed five pages.  The Court will enter final judgment on all requested amounts—including those set forth above—after it reviews Plaintiff's supplemental brief.


Date: December 15, 2025                                    _____
                                                           ANA C. REYES
                                                           United States District Judge